[No. 33632. *En Banc.* January 14, 1957.]

THE STATE OF WASHINGTON, *Respondent*, v. RICHARD A. RINKES, *Appellant*.[1]

[1]Reported in 306 P. (2d) 205.

*Alan L. Froelich,* for appellant.

*Charles O. Carroll, Laurence D. Regal,* and *James J. Caplinger,* for respondent.

OTT, J.—Chapter 320, Laws of 1955, p. 1419, amending the law relating to the crime of escape, became effective June 8, 1955. The amended law is as follows:

RCW 9.31.005: "The term 'escape,' for the purposes of this chapter, shall mean the unlawful departure of a prisoner from the custody of a penal or correctional institution of the state of Washington, with or without the exertion of force or fraud in the execution thereof."

RCW 9.31.010 [*cf.* Rem. Rev. Stat., § 2342]: "Every prisoner confined in a prison, or being in the lawful custody of an officer or other person, who escapes or attempts to escape from such prison or custody if he is held on a charge, conviction, or sentence of a felony, shall be guilty of a felony; if held on a charge, conviction, or sentence of a gross misdemeanor or misdemeanor, he shall be guilty of a misdemeanor."

August 3, 1955, Richard A. Rinkes, having been charged with a felony, escaped from the King county jail, in which he had been detained pending trial. He was apprehended and charged, under the amended act, with the crime of escape.

The cause was tried to a jury. The defendant's general demurrer that the information did not allege a crime was overruled. The defendant's motion to dismiss the information and challenge to the sufficiency of the evidence were denied. The jury returned a verdict of guilty as charged. Judgment and sentence were entered. The defendant has appealed.

All of appellant's assignments of error relate to a single issue: Does the 1955 amendment of the escape act exclude escapes from county jails?

The appellant contends that a county jail is not a penal or correctional institution *of* (belonging to) the state of Washington; hence, an escape from a county jail does not constitute a crime and is not within the purview of the amended act.

■ A county jail does not *belong* to the state of Washington. The King county jail *belongs* to the municipal corporation of King county. Although a county jail is not a Washington state penal institution, it is a definite part of the penal and correctional system of the state. All criminal cases must be commenced and prosecuted in the name of the state of Washington. Art. IV, § 27, state constitution. Except for certain transitory offenses, not here pertinent, an accused person is charged by complaint, information, or indictment, and the case is tried before a justice or superior court for the county in which the offense against the peace and dignity of the state of Washington was committed. The authority to provide a place for the detention of persons charged wih the commission of a criminal offense, pending their trial, conviction, or sentence, has been delegated solely to the several counties. Apprehension, detention, and trial of an accused person are indispensable parts of the criminal process of this state.

The legislature has made county jails a part of the penal or correctional system of the state by providing that the imprisonment penalty for misdemeanors and gross misdemeanors must be served in county jails. Hence, a county jail is a penal institution where criminal offenders against the state are incarcerated.

■ The amended statute uses the word "prison." A county jail is a prison. In *State ex rel. Thompson v. Snell*, 46 Wash. 327, 333, 89 Pac. 931 (1907), we said: "The word 'prison' as used in the statute comprehends . . . any county jail, . . ."

This court has not limited the meaning of the word "of," as contended by appellant, but has given it its full and broad meaning. In *State ex rel. Cowles v. Schively*, 63 Wash. 103, 107, 114 Pac. 901 (1911), we defined the word "of" as meaning, " 'In the most general sense; proceeding from; belonging to; relating to; connected with; concerning.' "

In construing penal statutes, we are committed to the following rules:

A court may not place a narrow, literal, and technical construction upon a part only of a statute, and ignore other relevant parts. In the process of construction, the intention of the lawmakers must be extracted from a consideration of all of the provisions of the act. *In re Cress*, 13 Wn. (2d) 7, 15, 123 P. (2d) 767 (1942). Statutes are to be construed according to their evident intent and purpose. *State v. Warburton*, 97 Wash. 242, 247, 166 Pac. 615 (1917). The legislative intent must be gleaned from a consideration of the whole act, by giving effect to the entire statute and to every part thereof. *State v. Houck*, 32 Wn. (2d) 681, 684, 203 P. (2d) 693 (1949), and cases cited.

Where an act has a doubtful or ambiguous meaning, it is the duty of the court to adopt a construction that is reasonably liberal, in furtherance of the obvious or manifest purpose of the legislature. Statutes *in pari materia* must be construed together. *State v. Houck, supra,* p. 684, and cases cited.

Penal statutes are to be construed strictly, to the end that offenses not entitled to be included shall not be prosecuted. But they are not to be construed so strictly that they would be defeated by a forced and over-strict construction. *State v. Larson*, 119 Wash. 123, 125, 204 Pac. 1041 (1922), and cases cited.

Strict construction of a penal statute means merely that the punitive sanctions must be confined to such matters as are clearly and manifestly within the statutory terms and purposes. It does not mean that a forced, narrow, and over-strict construction should be applied to defeat the obvious intent of the legislature. See *Northern Securities Co. v. United States*, 193 U. S. 197, 48 L. Ed. 679, 24 S. Ct. 436 (1904); *United States v. Coplon*, 88 F. Supp. 912 (1949); *State v. Zazzaro*, 128 Conn. 160, 20 A. (2d) 737 (1941); *People v. Conti*, 127 Misc. Rep. 244, 216 N. Y. S. 442 (1926).

If, as contended by the appellant, the act "now covers only escapes from state [owned] institutions," RCW 9.31.010 is entirely meaningless. The legislature did not intend to repeal this section because it was amended and re-enacted simultaneously with the enactment of RCW 9.31.005.

■ Applying the above rules of statutory construction to the instant case, we hold that county-owned jails are not Washington state institutions, but do form an essential link in the chain of penal and correctional institutions of the state. The word "of," as used in chapter 320, Laws of 1955, p. 1419, was intended by the legislature to be given its common and accepted full meaning, and was not intended to be limited to the narrowest meaning of which it is susceptible. The common and accepted full meaning of the word "of" gives effect to the entire act and to each and every word, section, and clause thereof. The intention of the legislature is clear, when the act is read as a whole.

We conclude that the questioned words of the law, "of a penal or correctional institution of the state of Washington," include county jails as " 'relating to; connected with; concerning' " the state's system of penal or correctional institutions.

The judgment and sentence are affirmed.

HILL, C. J., MALLERY, WEAVER, and FOSTER, JJ., concur.

FINLEY, J. (concurring in the result)—Clearly recognizing that matters seemingly reasonable, logical, and commonsensical to one individual may not appear so to another, it is my best judgment that the result reached in the majority opinion is the most reasonable, logical, and common-sense one. Furthermore, the opinion cites an abundance of cases, and emphasizes acceptable and persuasive principles or rules of statutory interpretation in support of its disposition of this appeal. This is, or it seems to me it should be, sufficient.

But, in addition, it particularly seems to me simply too farfetched to think that the governor of this state, the members of the senate and the house of representatives, who enacted the herein-involved 1955 statutory amendment, consciously noted—and furthermore, that each and every one of these public officials deliberately approved or intended—the use of the preposition *of*, in this statute in its technical possessive sense, and for the specific purpose of distinguishing and applying different legal sanctions as

between (a) state prisoners incarcerated in county jails (owned by various counties) and (b) those state prisoners incarcerated in institutions such as the state penitentiary, *owned* by the state. If this assumption or analysis is valid, and I think it is, then it follows that the legislators who enacted the statute intended, as a matter of over-all social policy, to penalize all state criminal offenders who escape from a county jail, the state penitentiary, or other penal institutions in the state, whether owned or operated by the state, or otherwise.

In the instant case, without quibbling as to dictionary definitions of the preposition *of*, and without attempting to distinguish what was said or not said in certain court decisions about this grammatical midget or giant, as the case may have been in such decisions, and lastly, without attempting to rationalize pertinent but inconsistent rules of statutory interpretation, I would call "strike three" on appellant's counsel and declare the state the winner of the series. Besides, as mentioned above, the result reached in the majority opinion just plain makes good sense, and therein I concur.

SCHWELLENBACH, J. (dissenting)—Prior to the enactment of chapter 320, Laws of 1955, p. 1419, RCW 9.31.010 provided:

"*Crime of Escape, what constitutes.* Every prisoner confined in a prison, or being in the lawful custody of an officer or other person, who escapes or attempts to escape from such prison or custody, *by force or fraud*, if he is held on a charge, conviction, or sentence of a felony, shall be guilty of a felony; if held on a charge, conviction, or sentence of a gross misdemeanor or misdemeanor, he shall be guilty of a misdemeanor." (Italics mine.)

Considerable difficulty had been experienced in obtaining convictions against prisoners who had escaped from state prison camps, the state prison, and the state reformatory, especially those who escaped without using force or fraud. Recommendation No. 5 of the Fourth Biennial Report of the Washington State Legislative Council, January 1955, provided:

"That the law be amended to provide a penalty where a prison inmate escapes without using force or fraud.

"Purpose:   Law does not presently provide a penalty where inmate escapes without using force or fraud.  An inmate can, at the present time, walk away from prison labor crews, or even climb over the wall and not be held subject to any penalty for escape, where it cannot be shown that force or fraud was used."

As a result, a new section was added to RCW, chapter 9.31, defining the term "escape";

"Section 1.   Chapter 9.31 RCW, is amended by adding the following section:

"The term 'escape', for the purposes of this chapter, shall mean the unlawful departure of a prisoner from the custody of a penal or correctional institution of the state of Washington, with or without the exertion of force or fraud in the execution thereof."

RCW 9.31.010 was then re-enacted, omitting therefrom, however, the phrase, "by force or fraud."

The legislature has now defined "escape."  It says that the term "shall mean the unlawful departure of a prisoner from the custody of a penal or correctional institution of the state of Washington."  We must determine the legislature's intention by what it said.  It was so intent on remedying the situation where an inmate could walk away from prison labor crews or even climb over the wall that it limited the definition of "escape" to penal institutions of the state.  County jails and city jails were overlooked.  We cannot help the prosecutor out of his dilemma by saying that "of a penal or correctional institution of the state" includes county jails.

In *State ex rel. Cowles v. Schively*, 63 Wash. 103, 114 Pac. 901, cited by the majority, the court was concerned with the meaning of the phrase "in two daily papers of the largest general circulation," contained in Rem. & Bal. Code, § 6119.  The word "of" has many different meanings, depending upon the sense in which it is used.  For example, an information charging A with stealing the property "of" B, means the property "belonging to" B.  It is clear to me that, in the statute in question, the legislature was referring to a

penal or correctional institution "belonging to" or "owned by" the state of Washington.

Penal statutes must be strictly construed. In *State v. Hoffman*, 30 Wn. (2d) 475, 191 P. (2d) 865, a case involving an escape from the state penitentiary, we said:

"In the case of *State v. Hoffman*, 110 Wash. 82, 188 Pac. 25, it was held that penal statutes must be strictly construed. In the course of the opinion, the court said:

" 'Unless the language of the statute makes the conduct of the appellant criminal, there can be no recourse to the intention of the act to establish its interpretation. Though conduct may be within the reason of an act and the mischief to be remedied thereby, yet it cannot be punished as a crime if not so denominated by the statute. Lewis, Sutherland's Statutory Construction (2d ed.), § 520.' "

The majority states: "If, as contended by the appellant, the act 'now covers only escapes from state [owned] institutions,' RCW 9.31.010 is entirely meaningless." It was necessary, of course, to re-enact RCW 9.31.010 (eliminating "by force or fraud") in order to make it a crime to escape. I do not doubt that, in the back of their minds, the legislators meant to include escapes from county jails, but they did not say so. When they defined "escape," "for the purpose of this chapter," they limited it to the departure from the custody of a penal or correctional institution belonging to the state.

The judgment and sentence should be reversed.

Rosellini and Donworth, JJ., concur with Schwellenbach, J.